# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**PARTYLITE GIFTS, INC.,**

    **Plaintiff,**

v.                                                                    Case No.: 8:10-CV-1490-T-27EAJ

**TARIE MACMILLAN,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant's **Motion to Dismiss** (Dkt. 15) and Plaintiff's **Memorandum of Law in Opposition** (Dkt. 26).[1] For the reasons stated below, the undersigned recommends that the motion be denied.

### Plaintiff's Allegations

Plaintiff PartyLite, Inc. ("PartyLite") sells candles through home party plans. "Hosts" conduct sales parties in their homes for "Guests." At the parties, independent contractors known as "Consultants" demonstrate and take orders for PartyLite's products. A Consultant may become a "Unit Leader" by achieving certain sales levels and recruiting new Consultants. Unit Leaders earn commission from their own sales as well as "downline" sales by their Consultants. A Unit Leader may become a high-level "Leader" if downline sales and recruitment meet certain goals.

All Consultants sign a standard form "Consultant Contract" which requires compliance with a "Consultant Guide." The Consultant Guide includes the following provisions:

> Agree you will at all times positively promote and not disparage PartyLite, its

---

[1] The District Judge has referred the motion to the undersigned for a report and recommendation (Dkt. 23).

>products, programs, representatives, or personnel....
>
>Agree not to promote or sell other products or services or recruit for other companies or other business activities at PartyLite [s]hows, meetings, or other events....
>
>Agree that should you represent another company or participate in other business activities outside PartyLite that any information, printed materials or other items obtained through your association with PartyLite be kept separate and not used to solicit, promote, market or sell at or for any non-PartyLite activity. Any use of PartyLite information to promote non-PartyLite business activities constitutes "unfair business practice" which is legally actionable....
>
>Agree to keep PartyLite information confidential.

(Dkt. 1 Ex. 2). The Consultant Contract also includes a "Privacy and Confidential Information Policy" that defines confidential information to include personal and financial details about Hosts, Guests, Consultants and Leaders including:

>Names and contact information (telephone number, e-mail address, street address, etc.)....
>
>Sales and/or ordering information (credit card information, social security number, bank account number, etc.)....
>
>Any other information about your Hosts, Guests or fellow Consultants and Leaders that would be helpful to others engaging in any fraud, identity theft or competitive activity against PartyLite.

(Id.). The Consultant Contract provides that all such information: 1) is PartyLite's property; 2) may not be disclosed to anyone outside of PartyLite or affiliated with PartyLite unless they need to know it or have a right to it; and 3) can "never be used for any other business venture or other purpose" (Id.).

Defendant became a Consultant and eventually became a Leader, specifically, a "Senior Regional Vice President."[2] PartyLite and Defendant entered into a "Leader Agreement" that

---

[2] This was an independent contractor position, not a corporate position.

included the following provisions:

> I agree that, during the term of this Agreement and thereafter, I shall not use, or provide others, any Company proprietary or confidential information in any form (including, but not limited to, customer information, financial information or contact information regarding other Leaders or Consultants, as well as, Hostesses and Guests) to adversely affect the Company or to benefit any other company or myself. I further agree that, during the term of this Agreement and after the term ends and thereafter, I shall not solicit or otherwise attempt to persuade any PartyLite Consultant or Leader to sell, resell or promote products of any other direct sales company, or to cease to be a Consultant or Leader of the Company....
>
> During the term of this Agreement I may accept employment or other engagements and may participate in other activities without obtaining the Company's approval thereof; provided, however, that such employment, other engagements and activities do not violate this Agreement and do not involve selling, reselling, promoting products, or actively representing other direct sales companies that are similar to or competitive with the Company.

(Dkt. 1 Ex. 3). Defendant's Consultant Contract remained in full force and effect despite the formation of the Leader Agreement.

Defendant subsequently joined the sales force of Park Lane Jewelry, Inc. ("Park Lane"), another direct sales company. Defendant used confidential contact information obtained from PartyLite to recruit PartyLite salespeople to become direct sellers for Park Lane. Defendant told a "Regional Leader" that she had recruited at least 100 PartyLite salespeople to join Park Lane's sales force, that PartyLite was a "sinking ship," and that PartyLite's contracts prohibiting anti-competitive behavior were "null and void."

## **Analysis**

PartyLite claims that Defendant breached the Leader Agreement, breached the Consultant Contract, misappropriated PartyLite's trade secrets, and tortiously interfered with PartyLite's relationships with its salespeople. Defendant maintains that each of these claims should be dismissed for failure to state a claim.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted). To survive a motion to dismiss a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## I. Breach of the Leader Agreement

PartyLite alleges that Defendant breached the Leader Agreement by: 1) joining Park Lane's sales force; 2) recruiting PartyLite's salespeople to join Park Lane's sales force; 3) misusing PartyLite's confidential information; and 4) disparaging PartyLite and misrepresenting its financial condition. Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., 175 F.3d 913, 914 (11th Cir. 1999) (per curiam) (citation omitted).[3]

### a. Joining Park Lane's Sales Force

Defendant maintains that PartyLite has failed to sufficiently allege that Defendant breached the Leader Agreement by joining Park Lane's sales force because there is no allegation that Park Lane is "similar to or competitive with" PartyLite. PartyLite alleges, however, that Defendant "became a member of the direct sales force of another direct sales company called [Park Lane], in

---

[3] The Leader Agreement contains a Massachusetts choice-of-law provision, however, neither party contends there is a material difference between Florida law and Massachusetts law for purposes of assessing whether PartyLite has stated a claim for breach of contract.

4

direct breach of her ongoing Agreements with PartyLite, including but not limited to Paragraph 10 of the Leader Agreement" (Dkt. 1 at ¶ 43). The tenth paragraph of the Leader Agreement restricts a Leader from accepting employment with "other direct sales companies that are similar to or competitive with [PartyLite]" (Dkt. 1 Ex. 3 at 3). Thus, PartyLite has sufficiently alleged that Defendant breached this provision of the Leader Agreement.

Defendant further contends that the Leader Agreement's restrictive covenant is unenforceable because it lacks limitations in time and geographic scope. "'Whether a non-compete covenant is reasonable or overly broad is a question of fact for the trial court.'" Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1237 (11th Cir. 2009) (quoting Whitby v. Infinity Radio Inc., 951 So. 2d 890, 897 (Fla. 4th DCA 2007)); accord Marine Contractors Co. v. Hurley, 310 N.E. 2d 915, 920 (Mass. 1974) ("While it is true that agreements not to compete will be enforced only in so far as they are reasonable ... what is reasonable depends on the facts of each case.") (citations omitted). Consequently, the issue should not be resolved on a motion to dismiss.

    b.    **<u>Misusing Confidential Information</u>**

Defendant argues that PartyLite has failed to sufficiently allege that Defendant misused confidential information because there is no allegation of a specific instance where Defendant used such information to recruit a PartyLite salesperson. The complaint, however, alleges that:

> Notably, [a Senior Regional Vice President], such as [Defendant], personally recruits very few people in the group with which she was associated. Of the hundreds of people in the 'downline' for which she served as [Senior Regional Vice President] - known as the 'Explosion Region' - only a small minority were actually recruited by [Defendant]. [Defendant] learned the identity, as well as the contact, sales and other information regarding the downline group only because she was given access to that information by PartyLite....
>
> [Defendant] used confidential contact information provided to her by PartyLite regarding PartyLite salespeople, to solicit and attempt to persuade members of

5

> PartyLite's sales force to become direct sellers for Park Lane, for the benefit of herself and Park Lane, and to the detriment of PartyLite.
>
> [O]n or about June 24, 2010, PartyLite began receiving emails and phone calls from various Consultants and Unit Leaders who are part of PartyLite's sales force, advising that [Defendant] had apparently left PartyLite and attempted to recruit them to become direct sellers for Park Lane.

(Dkt. 1 at ¶¶ 28, 47, 52). This is sufficient to state a plausible claim that Defendant used PartyLite's confidential information to recruit PartyLite salespeople. PartyLite need not recite the details as to each alleged instance of recruitment.

Defendant further contends that the information is not confidential because PartyLite salespeople put themselves in the public domain and their identities can be obtained through publicly available sources. Whether this is true is beyond the scope of the complaint and is not a basis for dismissal.

Finally, Defendant submits that there are no allegations that PartyLite took specific measures to maintain the confidentiality of the information. Yet the complaint expressly alleges that:

> Beyond the measures taken at the field level and contractual protections, PartyLite follows effective measures to safeguard the information internally. These steps include use of a virtual private network encryption program, secure passwords, on-screen confidentiality warnings and bold 'Confidential' boxes on the key written report. The company Code of Conduct for employees worldwide also specifically requires that employees protect the information. For employees with access to the information the company requires them to sign individual confirmation of compliance each year and conducts internal audit of Code compliance.

(Dkt. 1 at ¶¶ 23, 26). For purposes of a motion to dismiss, PartyLite has sufficiently alleged that the information at issue was confidential.

### c. **Damages**

Defendant asserts that PartyLite does not sufficiently allege how it suffered damage as a result of any breach of the Leader Agreement. PartyLite alleges that it was damaged as follows:

6

>[Defendant] told at least one PartyLite salesperson that she had recruited more than 100 other salespeople to sign up with Park Lane....
>
>[Defendant] ... has caused, and is likely to continue to cause, damage to PartyLite's sales force, causing injury to PartyLite....
>
>[Defendant's] breaches of the Leader Agreement are ongoing, and have already caused or are likely to cause damage to PartyLite in an amount to be determined at trial, but in no event less than $75,000 exclusive of interest and costs....

(Dkt. 1 at ¶¶ 50, 57, 63). Considering the allegations as a whole, PartyLite has stated a plausible claim that it was damaged by Defendant's breach of the Leader Agreement.

## II.   Breach of the Consultant Contract

PartyLite alleges that Defendant breached the Consultant Contract by: 1) using PartyLite's confidential information to recruit PartyLite salespeople to PartyLite's detriment and to Defendant's and Park Lane's benefit; and 2) disparaging PartyLite and misrepresenting its financial condition.[4] Relying on her arguments in connection with the Leader Agreement, Defendant maintains that PartyLite's claim fails because there is no "showing" of misuse of confidential information and there are no allegations of damages. As discussed above, PartyLite has sufficiently alleged that Defendant used PartyLite's confidential information to recruit PartyLite salespeople and damaged PartyLite in doing so.

## III.   Misappropriation of Trade Secrets

PartyLite claims that Defendant misappropriated information regarding its sales force in violation of the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 et seq.[5]

---

[4] As with the previous claim, neither party contends there is a material difference between Florida law and Massachusetts law.

[5] Plaintiff also alleges that Defendant violated Massachusetts law prohibiting the taking of trade secrets. See Mass. Gen. Laws ch. 93, § 42. Defendant submits that Florida law should govern

PartyLite "bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998); see Fla. Stat. § 688.002(2). Secret information: 1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and 2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4).

PartyLite alleges that information regarding its sales force is confidential and derives independent economic value:

> The identity of and other information regarding the salespeople is a valuable trade secret that PartyLite developed over many years at great expense. Knowing the information gives PartyLite a continuing competitive advantage in commerce. This information is not generally known and it would be extremely difficult, time consuming and expensive, if not impossible, to duplicate....
>
> The PartyLite information is a very detailed and valuable compilation of information that includes not only the names, addresses and contact information for salespeople, but also specific information concerning each individual's sales, downline structures, recruiting activities and hostesses. PartyLite spends many millions of dollars each year growing the salesforce and gathering information regarding it.
>
> The information regarding PartyLite's sales force is valuable information belonging to PartyLite that gives it a competitive advantage over those who do not know it.

(Dkt. 1 at ¶¶ 23-24, 69). Although Defendant disputes whether the information is truly a trade secret, that question of fact need not be resolved at this time. See True Title, Inc. v. Blanchard, No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659, at *2 n.1 (M.D. Fla. Feb. 5, 2007) (noting that

---

this claim because the alleged wrongdoing occurred in Florida. PartyLite apparently does not dispute this contention as its response cites only Florida law. Regardless, neither party contends there is a material difference between Massachusetts law and Florida law as to whether PartyLite has stated a claim for misappropriation of trade secrets.

8

"whether a particular type of information constitutes a trade secret is a question of fact better addressed in a motion for summary judgment"). For present purposes, PartyLite has sufficiently stated a plausible claim that the information constitutes a trade secret under Florida law.

Defendant also contends that PartyLite has failed to "establish" that it undertook reasonable efforts to maintain the secrecy of the information. As noted above, however, PartyLite alleges that:

> Beyond the measures taken at the field level and contractual protections, PartyLite follows effective measures to safeguard the information internally. These steps include use of a virtual private network encryption program, secure passwords, on-screen confidentiality warnings and bold 'Confidential' boxes on the key written report. The company Code of Conduct for employees worldwide also specifically requires that employees protect the information. For employees with access to the information the company requires them to sign individual confirmation of compliance each year and conducts internal audit of Code compliance.

(Dkt. 1 at ¶ 26). Although Defendant questions how PartyLite's salespeople could be effective despite these measures, that issue is not before the court. For present purposes, PartyLite has sufficiently alleged that it undertook reasonable efforts to maintain the secrecy of the information.

## IV. Tortious Interference

PartyLite claims that Defendant tortiously interfered with PartyLite's contractual relationships with its sales force.[6] A properly stated claim for tortious interference with a contractual relationship must allege that: 1) a contract existed; 2) the defendant knew of the contract; 3) the defendant intentionally procured the contract's breach; 4) there was no justification or privilege for doing so; and 5) the breach damaged the plaintiff. Johnson Enters. of Jacksonville v. FPL Grp., Inc., 162 F.3d 1290, 1321 (11th Cir. 1998). PartyLite has plausibly alleged that: 1) its

---

[6] Defendant maintains that this claim is also governed by Florida law as the alleged wrongdoing occurred in Florida. PartyLite apparently does not dispute this assertion as it relies on Florida law in its response.

9

Consultants signed Consultant Contacts; 2) Defendant knew they did so; 3) Defendant recruited 100 PartyLite salespeople to join Park Lane's sales force and thereby breach their Consultant Contracts; 4) Defendant was not justified in doing so; and 5) PartyLite's sales force was damaged as a result.[7]

## Conclusion

PartyLite has stated plausible claims that Defendant: 1) breached the Leader Agreement; 2) breached the Consultant Contract; 3) misappropriated PartyLite's trade secrets; and 4) tortiously interfered with PartyLite's relationships with its sales force. Consequently, none of these claims should be dismissed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   Defendant's Motion to Dismiss (Dkt. 15) be **DENIED**.

**Date: November 24, 2010**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

---

[7] For the same reasons, PartyLite has sufficiently pleaded its alternative claim that Defendant interfered with PartyLite's advantageous business relationships with its sales force. See KMS Rest. Corp. v. Wendy's Int'l, Inc., 361 F.3d 1321, 1325 (11th Cir. 2004) (outlining elements of claim).

Copies to:
Counsel of Record
District Judge